UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARRELL BURROWS,

        Plaintiff,

v.

UNKNOWN NOVAK et al.,

        Defendants.

_____/

Case No. 1:23-cv-1290

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate [judge] entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues IBC hearings investigator Unknown Novak and hearing officer Unknown Tucker. Plaintiff sues the Defendants in their respective official capacities only. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff's allegations[2] span a period of a few weeks during October of 2023. The allegations are not a model of clarity. On October 3, 2023, Plaintiff asked to be taken to healthcare after he fell off the top bunk. After an examination, an unidentified officer informed Plaintiff that the officer did not believe Plaintiff's story about falling off the top bunk. Apparently believing that Plaintiff had been harmed by another prisoner, the officer expressed an intention to send Plaintiff to protective custody. Plaintiff refused. An unknown officer wrote a Class II misconduct report based on Plaintiff's refusal.

The next day, Defendant Novak, the individual designated to investigate the misconduct report in anticipation of a hearing, provided Plaintiff with a questionnaire to complete regarding the incident. Plaintiff reports that he completed the questionnaire—apparently identifying a witness that Plaintiff wanted Defendant Novak to interview as part of his investigation. Plaintiff believes that Defendant Novak took no steps to interview the witness or conduct any investigation. Plaintiff reports that he never received a hearing investigation "packet." (ECF No. 1, PageID.3.)

On October 12, 2023, Plaintiff was seen by Defendant Tucker. Plaintiff indicates that Tucker found Plaintiff guilty of the misconduct even though she was aware that Plaintiff wanted

---

[2] Plaintiff's factual allegations appear in the complaint (ECF No. 1, PageID.3–5), a document titled "Pretrial Hearing, Joining Motions" (ECF No. 3, PageID.16–24), and a document titled "Pretrial Conference, Masters Hearing" (ECF No. 3-1, PageID.27–32). It appears that Plaintiff's "Pretrial Hearing, Joining Motions" document is intended as a request to amend his complaint to add allegations regarding a second misconduct charge. Plaintiff is permitted to amend his complaint once as a matter of course under Fed. R. Civ. P. 15(a)(1). Therefore the Court will consider that document as part of the complaint. Plaintiff's "Pretrial Conference, Masters Hearing" document, on the other hand, does not add new factual allegations. Instead, it appears that Plaintiff seeks discovery of—or at least preservation of—certain video recordings and documents. In light of the Court's disposition of Plaintiff's claims, that request would be moot. In short, the relief requested in ECF No. 3, and the attachment will be denied as unnecessary with regard to amendment of the complaint and moot with regard to discovery.

4

information and testimony from a witness and that Plaintiff had not been provided the information he needed from Defendant Novak.

Plaintiff reports that, as a result of the misconduct, he ended up housed in segregation. It is not clear whether he was housed in segregation as a sanction for being guilty of the misconduct or temporarily pending a hearing after the misconduct was reported.

All of the above allegations are taken from the complaint. Plaintiff provides additional detail in the "Pretrial Hearing, Joining Motions" document, (ECF No. 3); for example, Plaintiff identifies the witness as IBC Inspector Unknown Addis, (*Id*., PageID.19).[3] Additionally, Plaintiff also alleges that he was written another "disobeying a direct order" misconduct on October 13, 2023, for again refusing to go to protective custody. (*Id*., PageID.22.) The misconduct was again "investigated" by Defendant Novak, but Plaintiff alleges that Novak took no action to investigate. (*Id*., PageID.22–23.) Plaintiff does not offer any specific information regarding the resolution of the misconduct report, but he does suggest that he was either again placed in, or remained in, segregation. (*Id*., PageID.23.)

The allegations in the "Pretrial Conference, Masters Hearing" document mirror the allegations in the complaint and the "Pretrial Hearing, Joining Motions" document. (ECF No. 3-1, PageID.27–32).

Plaintiff seeks compensatory damages for the mental anguish that Defendants have caused him.

---

[3] It may be that Inspector Addis is the person with whom Plaintiff spoke after leaving healthcare— the person who did not believe Plaintiff's story about falling off the top bunk. (ECF No. 3, PageID.18.)

5

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff makes reference to three distinct constitutional rights: his Fourteenth Amendment right to due process in the investigation and hearing of the major misconducts; his Eighth Amendment right to be free of the cruel and unusual punishment inherent in the conditions of confinement in segregation; and his Fourteenth Amendment right to equal protection of the laws.

### A. Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. Here, Plaintiff alleges that he was found guilty of one misconduct charge and accused of another. He describes the initial misconduct charge as a "Class II," but also a "major" misconduct. (Compl., ECF No. 1, PageID.3.) Under the MDOC policy, it

cannot be both. Nonetheless, whether Plaintiff's misconducts fell into the category of class I or class II, a finding of guilt would not affect the duration of his sentence.

If Plaintiff's misconduct was a class I, major misconduct, it would not affect the duration of his sentence because he is serving sentences imposed on April 5, 2007, for offenses committed on October 6, 2005. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=254389 (last visited Dec. 18, 2023).[4] A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, any class I misconduct conviction had no impact on the duration of Plaintiff's sentence.

The same result follows if the misconduct reports at issue were class II, minor misconducts. MDOC policy provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *See* MDOC Policy Directive 03.03.105 ¶ DDDD (eff. Apr. 18, 2022). Thus, if the hearing officer found Plaintiff guilty of a class II misconduct, it could not impact the duration of Plaintiff's imprisonment.

Nor would the misconduct convictions impose an atypical and significant hardship on Plaintiff. The United States Court of Appeals for the Sixth Circuit routinely has held that

---

[4] Plaintiff's consecutive string also includes a sentence imposed on February 3, 1997, for an offense committed on June 4, 1996. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=254389 (last visited Dec. 18, 2023). That sentence, however, was served in its entirety years ago. A misconduct conviction during 2023 could not impact the duration of a sentence that had been completed years earlier.

misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Moreover, Plaintiff alleges no facts to indicate that any sanctions that he might receive for a class II misconduct conviction would constitute an "atypical and significant" deprivation under *Sandin*, 515 U.S. at 484.[5]

Plaintiff suggests that the conditions of his confinement in segregation pending his hearings were severe enough to constitute cruel and unusual punishment in violation of the Eighth Amendment. If so, those conditions might constitute an "atypical and significant" deprivation. But confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*

---

[5] For example, if Plaintiff received "loss of privileges" for a period of time as a sanction, pursuant to MDOC Policy Directive 03.03.105, this would have involved the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation).

*v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Generally, periods of segregation lasting several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, based on the facts alleged in the complaint, the duration of Plaintiff's placement in segregation was less than two weeks.[6] That is far less than the several years or more at issue in *Selby*, *Harris*, and *Harden-Bey*. Plaintiff, therefore, cannot maintain procedural due process claims against Defendants premised upon his brief stay in segregation.

Because Plaintiff has failed to identify a protected liberty interest, he has failed to state a claim for violation of his due process rights.

**B.    Eighth Amendment**

Plaintiff mentions that Defendants violated his Eighth Amendment rights because the conditions in segregation were harsh. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived

---

[6] Indeed, it is unclear whether any of the time Plaintiff spent in segregation was a punishment for a misconduct conviction. If, as Plaintiff alleges, his misconducts were major misconducts, it is likely that he was temporarily confined in segregation pending his hearing. *See* MDOC Policy Directive 03.03.105 ¶¶ R, S, & T (eff. Apr. 18, 2022).

10

of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it appears that Plaintiff may have been denied certain privileges in segregation, he does not allege or show that he was being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### C. Equal Protection

Plaintiff also makes passing reference to violation of his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*,

11

801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. He merely uses the words "equal protection." At best, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment equal protection rights.

### D.     Official Capacity

Plaintiff has sued Defendants in their respective official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages, and that is the only relief Plaintiff seeks against Defendants. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, Plaintiff's complaint would also be properly dismissed on grounds of immunity.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

12

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also concludes that Plaintiff's request to amend the complaint, implicit in the document titled "Pretrial Hearing, Joining Motions," (ECF No. 3), will be denied as unnecessary. Plaintiff is entitled to amend his complaint without leave, and the Court has considered the additional allegations as part of Plaintiff's complaint. Plaintiff's requests relating to discovery that appear in the document titled "Pretrial Conference, Masters Hearing" (ECF No. 3-1), will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 20, 2023              /s/ Sally J. Berens
                                      SALLY J. BERENS
                                      United States Magistrate Judge